**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| DAVID E. HUNNEL, | ) | No. ED CV 04-1185-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 27, 2004, seeking review of the Commissioner's denial of his application for Supplemental Security Income ("SSI") payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on November 3, 2004. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 18, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## <u>BACKGROUND</u>

Plaintiff was born on September 12, 1944. [Administrative Record ("AR") at 29, 50.] He has a tenth grade education.  [AR at 29.] Plaintiff previously worked as a construction plasterer and handyman.  [AR at 30-32.]

On August 27, 1997, plaintiff protectively filed an application for Supplemental Security Income payments, in which he alleged that he had been disabled since January 1, 1997.  [AR at 50-53.]  After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on November 9, 1998, at which plaintiff appeared and testified on his own behalf. A third party witness and a vocational expert also testified.  [AR at 26-37.] On December 29, 1998, the ALJ determined that plaintiff was not disabled because he retained the ability to perform medium work activity.[1]  [AR at 125-29.] On June 1, 2001, pursuant to plaintiff's request for review, the Appeals Council vacated the decision and remanded the case for further proceedings. [AR at 136-38.]  Upon remand, plaintiff stipulated to a later disability onset date of September 12, 1999 (the date he turned 55), and the ALJ subsequently determined that plaintiff was disabled as of that date. [AR at 12-15.]

Plaintiff sought review on the basis that he should have been found disabled since January 1, 1997. [AR at 7.]  After the Appeals Council denied review, plaintiff filed a complaint in federal court in Case No. ED CV 02-753-PLA.  The parties stipulated to remand the case back to the ALJ for consideration of additional matters. [AR at 221-24.]  A second hearing was held on September 16, 2003, at which plaintiff appeared with a non-attorney representative and testified on his own behalf.  Again, testimony was also provided by a vocational expert and a third party witness. [AR at 232-58.] On October 16, 2003, the ALJ issued a decision denying plaintiff's claim for benefits, finding that he has not been under a disability "at any time." [AR at 158-67.]  When the Appeals

---

[1]   Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

2

Council denied review, the ALJ's decision became the final decision of the Commissioner.  [AR at 150-52.]

### III.

### **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

### IV.

### **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

/

/

/

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

/

/

/

/

/

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that, for the time period January 1, 1997, to the time of the decision, plaintiff was engaged in substantial gainful work activity.[2]  [AR at 166.] For the time period January 1, 1999, up to September 12, 1999, the ALJ continued with the next steps in the sequential analysis.  At step two, he found that plaintiff suffers from the severe impairment of "mild to moderate degenerative disc disease of the lumbar spine."  [Id.]  At step three, the ALJ found that plaintiff's impairment does not meet or equal the requirements of any of the impairments in the Listings.  [Id.] The ALJ further determined that plaintiff retains the residual functional capacity[3] to perform medium work activity.  [AR at 167.]  At step four, the ALJ determined that plaintiff is able to perform his past relevant work as an apartment maintenance person/motel clerk/pool servicer, and that his impairment has not prevented him from performing this work.  [Id.]  Accordingly, the ALJ found plaintiff not disabled.  [Id.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) failed to properly evaluate his complaints of pain; (2) failed to properly evaluate plaintiff's request for disability as of January 1, 1997; and (3) failed to properly determine whether there are other jobs existing in significant numbers in the national economy that plaintiff can perform.  Joint Stipulation ("Joint Stip.") at 9-10.

**A.    FAVORABLE DISABILITY DECISION FOR TIME PERIOD SEPTEMBER 12, 1999, TO THE PRESENT**

In order to adequately address plaintiff's claims in this action, it is necessary to review the relevant procedural history.  As set forth above, plaintiff's disability claim was initially denied by

---

[2]    But see fn. 6, infra.

[3]    Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

1    the ALJ in a decision issued on December 29, 1998.  After the Appeals Council remanded the
2    case, a second decision was issued on August 15, 2001, in which the ALJ found plaintiff disabled
3    beginning on September 12, 1999, and plaintiff was awarded benefits as of that date.  He filed
4    suit in federal court, however, seeking benefits for the time period January 1, 1997, up to
5    September 12, 1999.  The parties entered into a stipulated remand, which was filed in this Court
6    on April 18, 2003.

7        The Stipulation for Remand stated that the purpose of the remand "is to offer Plaintiff a new
8    ALJ hearing and decision.  *For the period prior to September 12, 1999*, the ALJ will determine
9    whether Plaintiff's 1997 and 1998 earnings met the requirements for substantial gainful activity,
10   evaluate Plaintiff's symptoms and credibility, make a finding on the third party testimony of
11   Plaintiff's former spouse, determine Plaintiff's residual functional capacity, determine whether
12   Plaintiff can return to his past relevant work, and if necessary, determine whether there are other
13   jobs that Plaintiff can perform." [AR at 221-22.] (Emphasis added.)

14       In its order remanding the case to the ALJ, the Appeals Council stated that although the
15   ALJ in the August 2001 decision found plaintiff to be disabled since September 12, 1999, he did
16   not include any findings regarding plaintiff's disability status for the time period August 27, 1997,
17   to September 11, 1999.  According to the Appeals Council, the remand was for the purpose of
18   determining, *with respect to the period prior to September 12, 1999*, the issues listed in the
19   Stipulation for Remand. [AR at 225-26.] Moreover, plaintiff was informed that the ALJ "will provide
20   [him] an opportunity to appear at a hearing, develop the record ..., and issue a new decision *for
21   the period prior to September 12, 1999*." [AR at 226.] (Emphasis added.)

22       A subsequent hearing was held, after which the ALJ issued a third opinion (i.e., the October
23   2003 decision), this time determining that plaintiff did not meet the disability requirements for the
24   entire time period at issue (i.e., since August 27, 1999, to the date of the decision).  [AR at 158-
25   67, 231-58.] The ALJ prefaced his decision with the following statement:  "The Federal Court
26   stipulation stipulated that the stipulation at the second hearing to amend the onset date to
27   September 12, 1999, could be set aside.  This placed all matters in issue." [AR at 158.] The ALJ
28   further added: "Inasmuch as the administrative law judge decision appealed from was based on

1  stipulation, when that stipulation was set aside, all matters then became again in issue." [AR at

2  159.]

3        Plaintiff filed an exception to the ALJ's decision, objecting that the ALJ failed to follow the

4  remand order. [AR at 168-70.]  The Appeals Council considered plaintiff's exception, but found

5  no reason to assume jurisdiction. [AR at 150-52.]  In doing so, the Appeals Council stated that it

6  "considered the Court remand order and found that ... there was no specific directive in the Court

7  order itself or the Appeals Council remand order precluding the [ALJ] from reviewing all aspects

8  of this case including the favorable actions of prior decisions.  It should be noted that when the

9  Court remanded this case and the Appeals Council did likewise, it vacated prior decisions with no

10 limits on the time period to be considered by the [ALJ].  Thus any previously favorable findings

11 were set aside and void." [AR at 150.] Plaintiff's benefits were subsequently terminated based on

12 the October 16, 2003, decision.  Joint Stip., p. 6, fn. 4; defendant's Supplemental Brief, p. 2.

13       Although plaintiff does not expressly raise this same objection in the Joint Stipulation -- that

14 the remand order was not followed -- the Court finds it necessary to examine, especially in light

15 of plaintiff's pro se status, whether the ALJ who issued the October 2003 decision impermissibly

16 exceeded the scope of this Court's remand order by determining plaintiff's disability status for the

17 time period from September 12, 1999, onward.

18       In general, "an administrative agency is bound on remand to apply the legal principles laid

19 down by the reviewing court."  Ischay v. Barnhart, 383 F.Supp.2d 1199, 1214 (C.D.Cal. 2005)

20 (citing F.C.C. v. Pottsville Broadcasting Co., 309 U.S. 134, 145, 60 S.Ct. 437, 84 L.Ed. 656

21 (1940)).  Indeed, any "[d]eviation from the court's remand order in the subsequent administrative

22 proceedings is itself legal error, subject to reversal on further judicial review."  Id. (quoting Sullivan

23 v. Hudson, 490 U.S. 877, 886, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989)).

24       Two doctrines support this proposition: the law of the case, and the rule of mandate.

25 Ischay, 383 F.Supp.2d at 1214.  "Under the 'law of the case' doctrine, 'a court is generally

26 precluded from reconsidering an issue that has already been decided by the same court, or a

27 higher court in the identical case."  Id. (quoting Thomas v. Bible, 983 F.2d 152, 154 (9th Cir.

28 1993)).  It is not necessary that the issue was expressly adjudicated; rather "it applies to [the]

1  Court's 'explicit decisions *as well as those issues decided by necessary implication*.'" Id. at 1217

2  (quoting United States v. Cote, 51 F.3d 178, 181 (9th Cir. 1995)) (emphasis in original).

3      In turn, the rule of mandate is considered to be a "specific and more binding variant of the

4  law of the case doctrine."   Ischay, 383 F.Supp.2d at 1214 (internal quotations and citation

5  omitted).  The rule requires that, upon remand, an ALJ's actions must be "consistent with both the

6  letter *and the spirit* of the [district court's] decision." Id. (citing Quern v. Jordan, 440 U.S. 332, 347

7  n.18, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)) (emphasis in original).  Thus, unless the mandate

8  allowed it, an already final decision cannot be revisited by a lower tribunal.  Id.

9      When any of the following circumstances exist, the court may in its discretion depart from

10  the law of the case:  (1) the first decision was clearly erroneous; (2) an intervening change in the

11  law occurred; (3) the evidence on remand is substantially different; (4) other changed

12  circumstances exist; or (5) a manifest injustice would otherwise result.  Ischay, 383 F.Supp.2d at

13  1214 (citing United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997)).

14      Where a remand is ordered on limited issues, and the ALJ reopens the case beyond the

15  identified issues and adjudicates matters already settled by the law of the case, the ALJ violates

16  the scope of the remand, provided none of the above exceptions exist.  Ischay, 383 F.Supp.2d

17  at 1214.  In Ischay, various ALJ's held four hearings on the plaintiff's application for disability

18  payments, which resulted in three different decisions.  The first ALJ issued an opinion holding that

19  the plaintiff was not disabled because he could perform his past work.  Id. at 1202-03.  The

20  federal district court ultimately reversed, finding error at step four of the sequential analysis.  In

21  its remand, the district court ordered the ALJ to complete the five step evaluation.  Id. at 1203.

22  A second hearing was held by a new ALJ who subsequently issued a second opinion, this time

23  finding the plaintiff not disabled at step five because he could perform a certain range of light jobs.

24  Following this second decision, the parties stipulated to remand the matter for the purpose of

25  obtaining further testimony from the vocational expert to assist the ALJ in resolving the issue of

26  "vocational adjustment." Id. at 1204-08.   A third hearing was held, followed by a fourth

27  supplemental hearing.  The ALJ later issued the third opinion in the matter which purported to

28  incorporate the evaluation of the evidence from the prior decisions, but not the findings or

1    conclusions obtained from them.  Id. at 1212.  Rather, the ALJ analyzed each step in the

2    sequential analysis, ultimately deciding that plaintiff was not disabled at step four and that

3    consideration of step five was therefore moot.  Id.

4           The Ischay plaintiff filed suit in federal court, raising the argument that the ALJ erred by

5    "disregarding the doctrine of the law of the case by abandoning the residual functional capacity

6    assessment he had made in the second decision."  Ischay, 383 F.Supp.2d at 1213.  The district

7    court agreed, stating that "it was clear that the remand was *solely* for purposes of permitting the

8    ALJ to re-determine whether Plaintiff was disabled at step five" and that  "[t]he stipulated remand

9    did *not* entitle the ALJ to disturb or revisit his analysis through step four of the sequential process."

10   Id. at 1219 (emphasis in original).  In reaching this determination that the ALJ's third opinion was

11   a violation of both the remand mandate and the doctrine of the law of the case, the court

12   considered whether any exceptions to the rule of mandate applied.  Because the evidence

13   presented pre- and post-remand was essentially the same, and no other exceptions applied, the

14   court found no reason to depart from the law of the case.  Id. at 1220-21.  After also concluding

15   that the ALJ improperly manipulated the evidentiary process to obtain a certain result, the Ischay

16   court held that "the doctrine of the law of the case and the rule of mandate compel the conclusion

17   that the ALJ abused his discretion to the extent that he took evidence on matters beyond the

18   single issue identified in this Court's Order" regarding the remand.  Id. at 1223.

19          Here, in light of the language of both the remand stipulation and the Appeals Council's

20   remand order, the Court finds that the purpose of the remand was for the limited issue of deciding

21   whether plaintiff was disabled for the time period prior to September 11, 1999.  This Court's

22   remand order in no way set aside the favorable determination for plaintiff concerning the time

23   period from September 12, 1999, onward. Accordingly, to the extent the ALJ reopened the case

24   to decide plaintiff's disability status for that later time period -- a determination already reached

25   in the August 2001 ALJ opinion -- the Court concludes that, pursuant to the reasoning set forth

26   in Ischay, the ALJ erred in violating the scope of the remand and the law of the case.

27          In making this determination, the Court has considered whether any exceptions to the

28   doctrine apply.  There is no indication that the August 2001 opinion awarding benefits was clearly

1    erroneous, nor did any change in the relevant law occur.  As for the evidence post-remand, it was

2    substantially the same as the evidence pre-remand.  Moreover, there do not appear to be any

3    other changed circumstances, and there is no indication that manifest injustice would result unless

4    there is a departure from the law of the case.  Accordingly, no exceptions exist here to justify

5    departing from the law of the case.  See Ischay, 383 F.Supp.2d at 1219-20.[4]

6

7

8    _____

     [4]   On February 1, 2006, the Court issued an order directing the parties to submit
9    supplemental briefing on several pertinent issues, such as whether the October 2003 decision by
     the ALJ should have been strictly limited to the issue of whether plaintiff was under a disability for
10   the time period January 1, 1997, to September 11, 1999, and whether the ALJ exceeded the
     scope of the remand and the law of the case by going beyond that limited time period to deny
11   plaintiff benefits.  See Ischay, 383 F.Supp.2d at 1214.

12          Defendant responded by pointing out that the Appeals Council remanded the case with
     "instructions and authority to consider any other issues the ALJ found to be appropriate."
13   Defendant's Supplemental Brief ("Supp. Brief") at 2.  Defendant argues that, because the
     evidence on remand showed plaintiff was substantially and gainfully employed between 1996 and
14   1998, the prior ALJ erred in the August 15, 2001, decision by finding that plaintiff had not engaged
     in substantial gainful activity since the alleged onset date of January 1, 1997.  Supp. Brief at 3.
15   Accordingly, defendant contends, it was appropriate to depart from the law of the case as "the
     prior decision was clearly erroneous and the ALJ properly revisited the evidence to determine
16   Plaintiff's eligibility."  Id. at 4.  The Court is not persuaded by defendant's argument.  A review of
     the August 15, 2001, decision shows that the ALJ found plaintiff had not engaged in substantial
17   gainful activity since September 12, 1999 -- not January 1, 1997.  [AR at 14.]  As such, the August
     15, 2001, decision is not incompatible with the later determination that plaintiff was engaged in
18   substantial gainful activity for the years 1996 through 1998.  Moreover, based on the language
     of both this Court's and the Appeals Council's remand orders, it seems obvious that the purpose
19   of the remand proceeding was to explore plaintiff's disability status for the period prior to
     September 12, 1999.  The fact that the Appeals Council added general language to its remand
20   order that the ALJ may take action on "any other issues ... [found] to be appropriate" does not
     obviate the fact that the scope of the remand was only for consideration of the earlier disability
21   onset date.

22          Defendant also contends that the ALJ permissibly reopened the prior decision because
     new and material evidence showed plaintiff was earning in-kind income after September 12, 1999.
23   Supp. Brief at 2-4.  Plaintiff testified in 1998, however, that he performed odd jobs at the small
     hotel where he resided in exchange for rent.  [AR at 29-33.]  Although he elaborated on those
24   duties during the 2003 hearing, the fact that he was performing the work had already been
     established in the record.  [AR at 239-44.]  Thus, it does not appear that his 2003 testimony
25   constitutes new evidence for the purpose of reopening his claim.  Furthermore, the ALJ made no
     finding in the October 16, 2003, decision that he was reopening the case pursuant to the
26   discovery of new and material evidence.  Defendant has not asserted any other basis for finding
     the August 15, 2001, ALJ decision clearly erroneous.

27

28

10

1    Finally, the ALJ did not premise the deviation from the August 2001 decision on any reason

2    other than his understanding that the stipulated remand "placed all matters in issue." [See AR at

3    158.] There is no clear indication from the ALJ's language that the prior decision was clearly

4    erroneous, that substantially different evidence had been discovered, or that any other recognized

5    exception applied for departing from the law of the case.  See Ischay, 383 F.Supp.2d at 1219-20.

6    Accordingly, pursuant to the foregoing analysis, the Court concludes that the ALJ abused his

7    discretion in exceeding the limited scope of the remand and determining that plaintiff is not

8    disabled from September 12, 1999, onward.

9

10   **B.    PLAINTIFF'S DISABILITY STATUS FROM JANUARY 1, 1997, TO SEPTEMBER 11,
         1999**

11

12   In the October 2003 opinion, the ALJ reviewed plaintiff's earnings records for 1997 and

13   1998, which reveal that plaintiff received wages in the amount of $6,300 for each year. [AR at

14   141-43, 160-61.]  According to plaintiff's testimony, these amounts represented the value of the

15   apartment he received rent-free in exchange for working as the handyman for a small hotel.  The

16   ALJ determined that the value of the free housing came under the definition of "wages" as set

17   forth in Section 209(a) of the Social Security Act. [AR at 161.] Accordingly, the ALJ found that

18   plaintiff was earning "over the threshold amount considered to be substantial gainful activity for

19   the years ... 1997 and 1998," thus rendering him not disabled for that period.  [Id.] Plaintiff asserts

20   that this determination was erroneous.  The Court disagrees.

21   To qualify for disability benefits, a claimant must be unable "to engage in any substantial

22   gainful activity by reason of any medically determinable physical or mental impairment which can

23   be expected to result in death or which has lasted or can be expected to last for a continuous

24   period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Similarly, benefits previously

25   awarded to a claimant may be terminated if "the individual is now able to engage in substantial

26   gainful activity."  42 U.S.C. § 423(f)(1)(B).

27   Federal regulations define substantial gainful activity ("SGA") as "work activity that involves

28   doing significant physical or mental activities," even if on a part-time basis or even if duties,

1 responsibilities, and pay are less than a claimant performed or received in the past.  20 C.F.R.

2 §§ 404.1572, 416.972.  A claimant's earnings and working conditions guide the determination of

3 whether the work constitutes SGA.  See 20 C.F.R. §§ 404.1573, 404.1574, 416.973, 416.974;

4 Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990) ("The concept of substantial gainful activity

5 involves the amount of compensation and the substantiality and gainfulness of the activity itself.").

6 Under social security regulations, earnings from work activity for the time period in issue ordinarily

7 show that an individual engaged in SGA if the monthly earnings exceeded approximately $500.

8 See 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2).

9          "Earnings are a presumptive, but not conclusive, indicator of substantial gainful activity,"

10 Azami v. Apfel, 24 F.Supp.2d 1007, 1012 (C.D.Cal. 1998), because the claimant "may rebut a

11 presumption based on earnings with evidence of his inability to . . . perform the job well, without

12 special assistance, or for only brief periods of time."  Keyes, 894 F.2d at 1056.  Such factors

13 include how and under what conditions the claimant performed his or her work.  Id.  For example,

14 work activity may not be considered SGA if the claimant: (1) required and received special

15 assistance from other employees in performing the work; (2) was allowed to work irregular hours

16 or take frequent rest periods; (3) was provided with special equipment or was assigned work

17 especially suited to his or her impairment; (4) was able to work only because of specially arranged

18 circumstances (e.g., other persons helped the claimant prepare for or get to and from work); (5)

19 was permitted to work at a lower standard of productivity or efficiency than other employees; or

20 (6) was given the opportunity to work despite the impairment because of family relationship, past

21 association with the employer, or the employer's concern for the claimant's welfare.  20 C.F.R.

22 §§ 404.1573(c), 416.973(c).  Evidence of "frequent absences, [and] the difficulties [plaintiff]

23 encountered in performing . . . simple tasks" would also be relevant.  See Chicager v. Califano,

24 574 F.2d 161, 164 (3rd Cir. 1978).

25          The Court concludes that the ALJ's determination that plaintiff was not disabled during

26 1997 and 1998 because he was engaged in SGA is supported by substantial evidence.  In his

27 application for benefits, plaintiff explained: "I manage some apartments.  I do not receive any

28 wages for this job ... Instead, I get free rent, valued at $500.00 per month." [AR at 51.]  At the

1998 hearing, plaintiff testified that he lived rent-free in an apartment located in a small hotel comprised of sixteen units, and worked there four to five hours per day performing tasks such as cleaning the pool and yard.[5] [AR at 32-33.] During the second hearing, plaintiff elaborated on his job duties, and testified that he also vacuumed, disposed of the trash, and rented rooms to people.  [AR at 239-44.] Plaintiff's earnings records for 1997 and 1998 indicate that he received a total of $6,300 in wages, which he testified was the equivalent of the rental value of his apartment. [AR at 239-40.]

Plaintiff appears to dispute the ALJ's determination on the basis that he received "in kind" payment as opposed to cash wages.  This distinction is immaterial, as work activity is gainful if it is the type of work usually done for profit, even if the profit is not realized.  See 20 C.F.R. §§ 404.1572(b), 416.972(b); Soria v. Callahan, 16 F.Supp.2d 1145, 1149-1151 (C.D.Cal. 1997) (plaintiff's receipt of $300 per month in reduced rent in exchange for managing apartments was taken into account when making determination that duties qualified as substantial gainful employment).

Plaintiff has failed to rebut the presumption that his work at the hotel complex constituted SGA during 1997 and 1998.  There is no indication that plaintiff was given any special accommodations by the hotel owner to allow him to accomplish his tasks.  Nor does the fact that plaintiff only worked part-time prevent his work from being considered substantial.  See Keyes, 894 F.2d at 1056.  Because plaintiff has not made a showing that he was not fully earning the compensation he received in the form of free rent, the ALJ's determination with respect to plaintiff's SGA during 1997 and 1998 will not be disturbed.

For the remaining time period at issue, January 1, 1999, to September 11, 1999, the ALJ proceeded to follow the next steps in the sequential analysis to determine plaintiff's disability

---

[5]   At the 2003 hearing, plaintiff testified that he only worked at the hotel for one hour per day. [AR at 240.] When the ALJ pointed out that during the 1998 hearing he had stated he worked four to five hours per day, plaintiff responded, "I didn't remember." [AR at 241.]

status.[6] The relevant record of evidence shows that in September 1997, Dr. Sarath Witana diagnosed plaintiff with degenerative disc disease of the lumbar spine, "compression fracture to L5", traumatic dislocation of left hip with recurrent arthritis, "sciatic nerve left", cervical spondilosis, nerve compression of the cervical spine, rheumatoid arthritis (rule out), and generalized osteoarthritis. [AR at 109-11.] In both April 1998 and February 1999, Dr. Witana prepared a Physical Capacities Evaluation in which she indicated that plaintiff's physical capabilities were significantly limited on account of the diagnosed conditions. [AR at 121, 144.]

The physical examination performed by the consultative examiner, Dr. Joseph Conaty, returned conflicting results. After conducting his physical assessment, and reviewing an x-ray of plaintiff's lumbar spine, Dr. Conaty diagnosed plaintiff with significant degenerative disease of the lumbosacral spine, and determined that plaintiff was capable of medium work. [AR at 116-20.]

The ALJ acknowledged the records from both doctors, and concluded that "the only medically-determinable impairment ... is degenerative disc disease of the lumbar spine." [AR at 163.] In making this determination, the ALJ rejected all diagnoses made by Dr. Witana other than degenerative disc disease. Plaintiff argues that the ALJ improperly discredited Dr. Witana's opinion. For the reasons explained below, the Court agrees.

---

[6]   The Court notes a material inconsistency within the ALJ's decision. In the body of the decision, after concluding that plaintiff was engaged in SGA for the years 1997 and 1998, the ALJ evaluated the severity of plaintiff's impairments for the period beginning on January 1, 1999. [AR at 161.] Nevertheless, the ALJ concluded in the "Findings" portion of the decision that plaintiff was engaged in SGA from 1997 onward -- and not just for the limited period of 1997 and 1998. [AR at 166-67.] If, in fact, plaintiff was engaged in SGA during the entire period of alleged disability, the ALJ should have ended his analysis at step one of the sequential analysis. Because the ALJ proceeded through the next steps with respect to plaintiff's condition since January 1, 1999, the Court presumes that the statement indicating plaintiff was engaged in SGA beginning on January 1, 1999, was inadvertent. Due to the confusion this inconsistency poses, the ALJ is directed upon remand to clarify the issue of whether plaintiff engaged in SGA at any time since January 1, 1999. In particular, the ALJ should explain whether plaintiff's in-kind income met the requirements for SGA for January 1999 through June 1999 (i.e., before the minimum monthly earnings increased to $700 per month in July 1999), or thereafter up to September 11, 1999. See 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2). In light of the inconsistency, the Court has analyzed the remainder of the ALJ's decision regarding the severity of plaintiff's impairments since January 1, 1999.

1    In evaluating medical opinions, the case law and regulations distinguish among three types

2    of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but

3    do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

4    claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at

5    830.  As a general rule, more weight should be given to the opinion of a treating physician than

6    to the opinions of doctors who do not treat the plaintiff.  Lester, 81 F.3d at 830; see also Smolen

7    v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) ("Because treating physicians are employed to cure

8    and thus have a greater opportunity to know and observe the patient as an individual, their

9    opinions are given greater weight than the opinions of other physicians.").

10    "However, an ALJ need not give controlling weight to the opinion of a treating physician."

11    Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004).  "The treating

12    physician's opinion is not ... necessarily conclusive as to ... the ultimate issue of disability."

13    Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).  "The ALJ may

14    disregard the treating physician's opinion whether or not that opinion is contradicted." Batson, 359

15    F.3d at 1159 (quoting Magallanes, 881 F.2d at 751).  Where the record contains conflicting

16    medical evidence, the ALJ is charged with determining credibility and resolving the conflict.

17    Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  When the treating physician's opinion

18    is not uncontroverted, the ALJ may reject it by setting forth specific and legitimate reasons for

19    doing so which are based on substantial evidence in the record.  Smolen, 80 F.3d at 1285.

20    Because Dr. Witana's diagnoses regarding plaintiff's impairments were controverted by

21    Dr. Conaty's medical opinion, the ALJ was required to set forth specific and legitimate reasons

22    based on substantial evidence from the record to discredit the treating physician.  Here, the ALJ

23    stated that he accorded little weight to Dr. Witana's opinion because it is "unsupported by the

24    clinical findings" and "contradicted by [plaintiff's] daily activities and by his own testimony." [AR

25    at 162.] In particular, the ALJ noted that plaintiff reported he is capable of sitting, lifting forty

26    pounds, driving his own car, and using his hands to perform work as a handyman/motel clerk/pool

27    servicer. [Id.]

28

1    With respect to the ALJ's statement regarding the lack of clinical findings, the Court

2    concludes that this reason is not sufficiently specific or legitimate to reject Dr. Witana's diagnoses.

3    See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not

4    supported by sufficient objective findings or are contrary to the preponderant conclusions

5    mandated by the objective findings does not achieve the level of specificity ... required, even when

6    the objective factors are listed seriatim."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989)

7    (finding that the ALJ rejecting the treating physician's opinion on the grounds that it was contrary

8    to clinical findings in the record, was "broad and vague, failing to specify why the ALJ felt the

9    treating physician's opinion was flawed").   The ALJ did not identify with any specificity other

10   evidence that would serve to discredit Dr. Witana's diagnoses.   Nor did he provide his own

11   interpretations of the evidence or make any findings as required.   See Reddick v. Chater,157 F.3d

12   715, 725 (9th Cir. 1998) (The ALJ "must set forth his own interpretations and explain why they,

13   rather than the [treating] doctors', are correct.").

14   Likewise, the Court is not persuaded that the ALJ's reliance on certain portions of plaintiff's

15   testimony serves as a proper basis to discredit the diagnoses made by Dr. Witana.   Although

16   plaintiff's reported ability to lift up to forty pounds and perform certain jobs does shed some light

17   on his physical capabilities, this evidence is not sufficient to discount the specific diagnoses of

18   impairments made by the treating doctor.   Plaintiff's admitted activities were too generally

19   described to conclusively establish that he does not suffer from, for example, arthritis in his hands

20   and hip, or problems with his cervical spine.

21   Accordingly, remand is appropriate to properly evaluate Dr. Witana's opinion to determine

22   if plaintiff does indeed suffer from the diagnosed conditions specified above. See Magallanes, 881

23   F.2d at 751.   In the event the ALJ determines that plaintiff does not suffer from those impairments,

24   he must explain his reasoning by setting forth specific and legitimate reasons based on substantial

25   evidence in the record.   If the ALJ determines the record is insufficient or ambiguous, he should

26   "fully and fairly develop the record ... to assure  that [plaintiff's] interests are considered." Webb

27   v. Barnhart, 2005 WL 3544685, *3 (9th Cir. Dec. 29, 2005) (quoting Brown v. Heckler, 713 F.2d

28   441, 443 (9th Cir. 1983) (per curiam)).   Where, as here, plaintiff is not represented by legal

16

counsel, this duty is especially important. See Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978) (for unrepresented plaintiffs, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts . . . He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.").

Due to the specific nature of the diagnoses made by Dr. Witana, it may be beneficial to the ALJ to recontact this treating physician to determine the bases for her opinion. See 20 C.F.R. § 416.919a(b)(4) (where the medical evidence contains "[a] conflict, inconsistency, ambiguity, or insufficiency," the ALJ is permitted to resolve the inconsistency by recontacting the treating physician).[7]

# VI.

# ORDER

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand in part is appropriate to properly consider the diagnoses made by Dr. Witana of plaintiff's impairments in order to evaluate plaintiff's claim for benefits for the time period January 1, 1999, to September 11, 1999.[8] The ALJ is directed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that:

1.     with respect to the denial of benefits for the time period January 1, 1997, to December 31, 1998, plaintiff's request for reversal is **denied** and the decision of the Commissioner is **affirmed**;

---

[7]     In the event the ALJ determines that plaintiff suffers from one or more additional impairments, the next steps of the sequential analysis should be followed to the extent appropriate.

[8]     In light of the Court's recommendation, the Court does not address plaintiff's remaining contentions of error.

2.     with respect to the denial of benefits for the time period January 1, 1999, to September 11, 1999, plaintiff's request for remand is **granted**, the decision of the Commissioner is **reversed**, and this action is **remanded** for further proceedings consistent with this Memorandum Opinion;

3.     with respect to the denial of benefits for the time period beginning on September 12, 1999, onward, plaintiff's request for reversal is **granted**, the decision of the Commissioner is reversed, and the action is remanded with instructions to calculate and award plaintiff SSI payments consistent with this Memorandum Opinion and Order.[9]

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: March 14, 2006                                    _____
                                                                              /S/
                                                                      PAUL L. ABRAMS
                                                         UNITED STATES MAGISTRATE JUDGE

---

[9]     This Order does not preclude defendant from conducting any evaluations that are permitted under the law to determine continuing disability.  See, e.g., 20 C.F.R. § 416.989.